*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2016-132

AUGUST TERM, 2016

| | |
|---|---|
| In re C.D., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Chittenden Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 277-10-14 Cnjv |

Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Father appeals from a family court judgment terminating his parental rights to the minor C.D. He contends the court: (1) abused its discretion "by overlooking the importance of preserving father's noncustodial role in C.D.'s life;" and (2) improperly prejudged the case. We affirm.

C.D. was born in April 2013. Mother and father, who are not married, were living at the time in a vacant house on the property of C.D.'s maternal grandmother. Soon thereafter, both parents began using opiates and heroin, their relationship became contentious, and C.D.'s grandmother assumed a larger role in her care. A congenital condition required C.D. to attend numerous medical and physical therapy appointments. Father attended few of these appointments.

In June 2014, father lost his job and moved out of the house. In October 2014, the State filed a CHINS petition based on allegations that the parents were not attending to the child's substantial medical needs. Following a temporary care hearing, the court issued a conditional care order placing C.D. with her maternal grandmother. She has remained in her grandmother's care ever since. Shortly thereafter, mother moved out of the family home, and in December 2014 stipulated to and adjudication of CHINS, acknowledging that at the time the CHINS petition was filed she had untreated substance abuse issues that placed C.D. at risk of harm.

In January 2015, the court approved a disposition plan with a goal of reunification and a plan of services and expectations for the parents, including requirements that they address their substance abuse and mental health issues, attend parenting education, and attend scheduled visits. The parents' failure to follow through on the plan of services led to the filing of a TPR petition in July 2015.

An evidentiary hearing was held in April 2016. Mother voluntarily relinquished her parental rights prior to the hearing. Father testified, acknowledging that he had done nothing to address his substance abuse, had engaged in no parenting education or other services, and provided no support for the child through 2015, but stated that he had entered residential treatment in late January 2016 and had started to attend counseling. Several witnesses testified, and the court found, that father's recent visits with C.D. went well, and that they had started to bond.

The court issued a written decision in April 2016. The court concluded that the evidence supported a finding of changed circumstances based on stagnation in father's ability to care for the

child. Applying the statutory best-interests criteria, the court noted that there was obvious love and affection between father and C.D., but found that it flowed principally from play rather than a nurturing parent-child relationship. For the latter, C.D. looked to her grandmother, who had loved and cared for her almost her entire life. The court also found that C.D. was fully integrated into the only home she had known and was thriving in her grandmother's care. Although he had shown recent progress, father had not played any constructive parental role during most of C.D.'s life. Finally, despite his recent progress, the court concluded that, measured from C.D.'s overriding need for permanency, there was no likelihood that father would resume parental responsibilities within a reasonable time. Accordingly, the court granted the petition. This appeal followed.

As we have frequently observed, "[o]ur role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion in terminating . . . parental rights." In re S.B., 174 Vt. 427, 429 (2002) (mem.). We will uphold the court's findings unless clearly erroneous, and its conclusions if reasonably supported by the findings. In re J.M., 2015 VT 94, ¶ 8.

Father contends the court abused its discretion by "overlooking the importance of preserving [his] noncustodial role in C.D.'s life," noting that termination would end his right to seek visitation. Although not stated explicitly, the argument implies that the court erred in failing to consider alternative dispositions to preserve father's right to maintain contact. We have "rejected the claim, however, that the court must consider less drastic alternatives to termination once it has determined the parent to be unfit and unable to resume his or her parental responsibilities." In re G.F., 2007 VT 11, ¶ 20, 181 Vt. 593 (mem.). Although we have also recognized that the court may consider the strength of a loving parent-child bond in considering the appropriate disposition, it is not to "be maintained regardless of the cost to the child." In re J.F., 2006 VT 45, ¶ 13, 180 Vt. 583 (mem.). Here, the court plainly recognized the affection between father and C.D., but concluded that the child's need for permanence was paramount. This was well within the court's discretion.

Father further claims that the court prejudged the case, citing an exchange at the start of the hearing in which the court asked a social worker if she was able to help C.D.'s maternal grandmother with the adoption process. The context reveals that the question was solely in reference to mother's recently completed voluntary relinquishment of her parental rights and her testimony and signed agreement indicating that she believed it was in C.D.'s best interests to be adopted by her grandmother. The court's question does not indicate that the court prejudged father's case. We thus find no merit to the claim, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Beth Robinson, Associate Justice

_____
Harold E. Eaton, Jr., Associate Justice

2